## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NEWTOWN ATHLETIC CLUB (NEWTOWN RACQUETBALL ASSOCIATES LLC, NEWTOWN RACQUETBALL INC.)**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE CINCINATTI INSURANCE COMPANIES**<br><br>**Defendant.** | **CIVIL ACTION NO. 21-2662** |

### MEMORANDUM OPINION

**Rufe, J.**                                                                                    **March 23, 2022**

Plaintiff Newtown Athletic Club ("Newtown"), a Pennsylvania corporation, initiated this action in the Bucks County, Pennsylvania Court of Common Pleas against its insurer, The Cincinnati Insurance Company ("Cincinnati"), an Ohio corporation, in response to Cincinnati's rejection of insurance claims arising from Newtown's suspension of business operations during the COVID-19 pandemic.[1] Cincinnati removed the action from state court on the basis of diversity of citizenship, and filed a motion to dismiss. Newtown has moved to remand the case to

---

[1] Compl. [Doc. No. 1] ¶¶ 77–82. Newtown advances four causes of action. Count I of Newtown's Complaint alleges a breach of contract due to "Cincinnati's denial of coverage and refusal to honor its contractual obligations pursuant to the Policy." Compl. [Doc. No. 1-1] ¶ 90. Count II seeks a declaratory judgment that "the policy Cincinnati sold to [Newtown] insures [Newtown's] losses and that Cincinnati's failure to provide insurance to [Newtown] under the Policy constitutes a breach, and any other and further relief as the Court deems just and proper." Compl. [Doc. No. 1-1] ¶ 96. Count III alleges bad faith liability "in violation of 42 Pa. C.S. § 8371 by and through [Cincinnati's] reckless or intentional conduct" and "[a]s a direct and proximate cause of Cincinnati's bad faith conduct, [Newtown] has incurred damages." Compl. [Doc. No. 1-1] ¶¶ 101–02. Finally, Count IV alleges Cincinnati breached the "implied covenant of good faith and fair dealing." Compl. [Doc. No. 1-1] ¶ 107. Cincinnati moves to dismiss all counts against it.

state court. For the reasons explained below, Newtown's motion to remand will be denied and Cincinnati's motion to dismiss will be granted.

## I.   BACKGROUND[2]

Newtown owns a number of properties in Bucks County, including a large private gym and fitness facility.[3] Newtown contracted with Cincinnati for a commercial property insurance policy, which was in full force and effect at all relevant times.[4]

On January 30, 2020, the World Health Organization declared an international public health emergency in response to the global outbreak of COVID-19. Following this declaration, a series of emergency orders at the federal, state and local level dramatically reshaped public life and impaired the operation of Newtown's facilities.[5] On March 19, 2020, Pennsylvania Governor Wolf issued an order requiring all businesses other than "life sustaining" businesses to close in-person operations.[6] On March 23, 2020, Governor Wolf issued a "Stay at Home" order for Bucks County, forcing Newtown's business to close.[7] As a result of COVID-19 and the related government orders, Newtown sustained business income losses in excess of $5,750,000, along with unspecified extra expenses and physical losses associated with remediating the property.[8] Further, Newtown alleges that employees and members of the facility were diagnosed with

---

[2] At this early stage in the litigation, the Court "accept[s] all factual allegations in the complaint as true and construe[s] those facts in the light most favorable to the plaintiff." *Hart v. City of Philadelphia*, 779 F. App'x 121, 124 (3d Cir. 2019).

[3] Compl. [Doc. No. 1-1] ¶ 2.

[4] Compl. [Doc. No. 1-1] ¶¶ 18–19, 86.

[5] Compl. [Doc. No. 1-1] ¶¶ 51–59.

[6] Compl. [Doc. No. 1-1] ¶ 56.

[7] Compl. [Doc. No. 1-1] ¶¶ 57, 61, 68.

[8] Compl. [Doc. No. 1-1] ¶¶ 4, 73–75.

COVID-19 and that there was a "high likelihood" that COVID-19 was physically present at Newtown's property.[9]

On or about March 23, 2020, Newtown submitted a notice to Cincinnati of its claim in connection with losses stemming from COVID-19 and the government-ordered closures. Cincinnati denied the claim on July 28, 2020 and denied Newtown's request for reconsideration on November 6, 2020.[10] Newtown filed suit in Pennsylvania state court on January 6, 2021, seeking to recover damages pursuant to Newtown's "all risk" insurance policy[11] for the revenues lost and additional costs incurred due to the COVID-19 public health crisis and resulting closure orders.[12] Although a writ of summons was issued at that time, this summons was never served on Cincinnati.[13] Newtown filed the Complaint on May 12, 2021 and served Cincinnati with the Complaint five days later, on May 17. Cincinnati, invoking federal diversity jurisdiction under 28 U.S.C. § 1332, timely removed the case to this Court on June 14, 2021.[14]

---

[9] Compl. [Doc. No. 1-1] ¶¶ 50, 64, 67.

[10] Compl. [Doc. No. 1-1] ¶¶ 77–82.

[11] "All risk" is a term of art that describes a type of general insurance policy. While a "named peril" policy only covers losses caused by a limited set of listed risks (for example, lightning, tornadoes, or floods), an "all-risk" policy covers all harmful events except those that are explicitly excluded by the terms of the policy. *See Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 74 (3d Cir. 1989) (describing the operation of an "all-risk" policy); *T.H.E. Ins. Co. v. Charles Boyer Childrens Tr.*, 269 F. App'x 220, 222 (3d Cir. 2008) (same); *compare with Ahsaki Gordon v. Allstate Prop. & Cas. Ins. Co.*, 704 F. App'x 149, 150 (3d Cir. 2017) (describing the operation of a "named peril" policy).

"The term 'all-risk' has been said to be 'somewhat misleading.' 'All-risk' is not synonymous with 'all loss.'" *Intermetal Mexicana, S.A.*, 866 F.2d at 75 (3d Cir. 1989) (citations and quotations omitted) (collecting cases). While an "all-risk" policy covers all unanticipated *causes* of harm, "the policy terms must be given their plain and ordinary meaning to determine whether the insured can prove that a particular loss falls within [the] policy's coverage." *Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, 537 F. Supp. 3d 780, 788 (E.D. Pa. 2021) (citing *Intermetal Mexicana, S.A.*, 866 F.2 at 75).

[12] Compl. [Doc. No. 1-1] ¶¶ 5–6.

[13] Not. Removal [Doc. No. 1] ¶ 2. The writ of summons was reinstated on March 2, April 1, and April 30 of 2021. *Id.*

[14] Not. Removal [Doc. No. 1] ¶¶ 2, 4, 11.

## II.  MOTION TO REMAND

Newtown has moved to remand this action to state court. As Newtown seeks both a declaratory judgment and legal relief (including damages for breach of contract and bad faith denial of a claim), the Court analyzes this motion under the independent claim test established by the Third Circuit in *Rarick v. Federated Service Insurance Co.*, "which balances the court's duty to hear legal claims with its discretion to decline jurisdiction over claims for declaratory relief."[15]

Under *Rarick*, the Court must first determine whether Newtown brings claims that are independent of its claim for declaratory judgment. "Non-declaratory claims are 'independent' of a declaratory claim when they are alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without . . . declaratory relief."[16]

Here, Newtown brings breach of contract and bad faith claims alongside a request for declaratory judgment under an insurance policy.[17] The Complaint alleges that Newtown suffered business income losses in excess of $5,750,000, and while the Complaint does not assign a valuation to each specific claim, there is no doubt that the potential damages for these claims exceed $75,000.[18] The Complaint also alleges that Newtown is a Pennsylvania corporation, and that Cincinnati is an Ohio corporation.[19] Therefore, Newtown's legal claims invoke the Court's

---

[15] *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 228 (3d Cir. 2017).

[16] *Rarick*, 852 F.3d at 228.

[17] Count I of the Complaint alleges a breach of contract due to Cincinnati's denial of coverage for COVID-19 related losses, Count III of the Complaint alleges "bad faith liability" pursuant to Pennsylvania statute, and Count IV alleges that Cincinnati breached its duty of good faith and fair dealing with respect to the contract. Compl. [Doc. No. 1-1] ¶¶ 90, 101–02, 107.

[18] Compl. [Doc. No. 1-1] ¶¶ 4, 73–75.

[19] Compl. [Doc. No. 1-1] ¶¶ 11–12.

diversity jurisdiction pursuant to 28 U.S.C. § 1332, and must be treated as independent of the declaratory judgment claim.[20]

Next, the Court must determine whether any "exceptional circumstances" justify remanding this action in the face of the Court's "virtually unflagging" obligation to exercise jurisdiction.[21] The Court must consider "(1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties."[22] "The balancing of factors is 'heavily weighted in favor of the exercise of jurisdiction.'"[23] [T]his is not an *in rem* case, litigating in federal court will not inconvenience either party, there is no risk of piecemeal litigation, and both federal and state courts can protect the interests of the parties."[24] Although state law controls and the state court would adequately protect the interests of the parties, these factors are usually present and do not justify declining jurisdiction in this case.

Exceptional circumstances may be present "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance

---

[20] Although the consent of the parties is not dispositive of an issue affecting jurisdiction, the Court notes that both parties appear to concede that Newtown has brought independent claims as defined in *Rarick*. *See* Pl.'s Reply Mot. Remand [Doc. No. 13] at 4.

[21] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 818 (1976).

[22] *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc*., 571 F.3d 299, 308 (3d Cir. 2009) (citation omitted).

[23] *Id.* (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

[24] *Greenwood Racing Inc. v. Am. Guarantee & Liab. Ins. Co.*, No. CV 21-01682, 2021 WL 4902343, at *6 (E.D. Pa. Oct. 20, 2021). Where abstention is "the exception, not the rule," the two remaining factors are not persuasive. *Colorado River Water Conservation Dist.*, 424 U.S. at 813.

transcends the result in the case then at bar."[25] However, this case presents no new or unique questions of state law or policy. Since the onset of the COVID-19 pandemic many similar disputes surrounding commercial property insurance policies have been adjudicated in this district,[26] and Newtown has failed to identify any other "exceptional circumstances" that justify remanding this case to state court.

## III.   MOTION TO DISMISS

Cincinnati has moved to dismiss Newtown's complaint for failure to state a claim.[27] Cincinnati contends that the Business Income, Extra Expense, and Civil Authority provisions of Newtown's insurance coverage require direct physical loss or damage to the insured premises. Cincinnati argues that "Newtown does not allege physical alteration to its property" or that COVID-19 "affect[s] the structural integrity of the building" and therefore Newtown fails to plead necessary facts to be entitled to insurance coverage under the policy.[28]

### A.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29] "[T]he Court must accept as true all factual allegations in the complaint

---

[25] *Colorado River Water Conservation Dist.*, 424 U.S. at 814 (citation omitted).

[26] *See, e.g., Whiskey Flats Inc. v. Axis Ins. Co.*, 519 F. Supp. 3d 231, 236 (E.D. Pa. 2021); *Infinity Real Est., LLC v. Travelers Excess & Surplus Lines Co.*, No. CV 20-6398, 2021 WL 4169417, at *4 (E.D. Pa. Sept. 13, 2021); *Star Buick GMC v. Sentry Ins. Grp.*, 541 F. Supp. 3d 582, 587 (E.D. Pa. 2021); *Shantzer v. Travelers Cas. Ins. Co. of Am.* 531 F. Supp. 3d 920, 921 (E.D. Pa. 2021); *Chester Cnty. Sports Arena v. Cincinnati Specialty Underwriters Ins. Co.*, 530 F. Supp. 3d 546, 554 (E.D. Pa. 2021).

[27] Mem. L. Support Mot. Dismiss [Doc. No. 5-2] at 3.

[28] Mem. L. Support Mot. Dismiss [Doc. No. 5-2] at 10, 15.

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, 537 F. Supp. 3d 780, 786 (E.D. Pa. 2021).

and make all reasonable inferences in favor of the plaintiff."[30] "A plaintiff 'must plead more than labels and conclusions,' and '[f]actual allegations must be enough to raise the right to relief above the speculative level … '"[31]

In addition to the pleadings, "the court may consider 'allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'"[32] Newtown has attached the disputed policy as Exhibit A to the Complaint, and the Complaint certifies that the document provided is a "true and correct" copy.[33] Noting that no party argues that the provided policy is incomplete, incorrect, or modified by agreements or endorsements that have not been provided to the Court, the Court will consider the text of the policy as provided by Newtown for the purposes of evaluating Cincinnati's motion to dismiss.

### B.  Discussion

Newtown argues that it is entitled to coverage under each of the Business Income, Extra Expense, and Civil Authority provisions of the insurance policy. Under Pennsylvania law, "interpretation of an insurance contract is a question of law" that the court must decide.[34] "[A]ll provisions of an insurance contract must be read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity while at the same time giving effect to

---

[30] *Susan Spath Hegedus, Inc. v. ACE Fire Underwriters Ins. Co.*, 538 F. Supp. 3d 457, 461 (E.D. Pa. 2021) (citations omitted).

[31] *Shantzer*, 531 F. Supp. 3d at 924 (citing *Twombly*, 550 U.S. at 555).

[32] *Brian Handel D.M.D., P.C. v. Allstate Ins. Co*., 499 F. Supp. 3d 95, 97 (E.D. Pa. 2020) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

[33] Compl. [Doc. No. 1-1] ¶ 19.

[34] *401 Fourth St., Inc. v. Investors Ins. Grp*., 879 A.2d 166, 170 (Pa 2005); *see also Del. Valley Mgmt., LLC v. Cont'l Cas. Co.*, No. 2:20-CV-4309, 2021 WL 5235277, at *3 (E.D. Pa. Nov. 10, 2021) (same).

7

all of its provisions."[35] Where terms are ambiguous, the court must interpret the language in

favor of the insured.[36] "In an action based upon an 'all risks' insurance policy, the burden is upon

the insured to show that a loss has occurred; thereafter, the burden is on the insurer to defend by

showing that the loss falls within a specific policy exclusion."[37]

> 1.  *Relevant Insurance Provisions*

Newtown claims losses under three specific coverage provisions of the insurance policy:

"Business Income" coverage, "Extra Expense" coverage, and "Civil Authority" coverage.[38] The

Business Income clause provides that:

> [Cincinnati] will pay for the actual loss of "Business Income" and "Rental Value"
> [Newtown] sustain[s] due to the necessary "suspension" of [Newtown's] "operations"
> during the "period of restoration." The "suspension" must be caused by direct "loss" to
> property at a "premises" caused by or resulting from any Covered Cause of Loss.[39]

The Civil Authority clause provides, in relevant part, that:

> When a Covered Cause of Loss causes damage to property other than Covered Property
> at a "premises", [Cincinnati] will pay for the actual loss of "Business Income" and
> necessary Extra Expense [Newtown] sustain[s] caused by action of civil authority that
> prohibits access to the "premises" provided that:
>
> (a)  Access to the area immediately surrounding the damaged property is prohibited by
>      civil authorities as a result of the damage; and

---

[35] *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) (quoting *Masters v. Celina Mut. Ins. Co.*, 224 A.2d 774, 776 (Pa. 1966)).

[36] Language of a policy is ambiguous "where it is reasonably susceptible of more than one construction and meaning." *Id.* at *4 (citing *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014)).

[37] *Wexler Knitting Mills v. Atl. Mut. Ins. Co.*, 382 Pa. Super. 405, 408 (1989); *see also Betz v. Erie Ins. Exch.*, 2008 PA Super 221, ¶ 17, 957 A.2d 1244, 1256 (2008) (same).

[38] Compl. [Doc. No. 1-1] ¶ 26.

[39] Policy [Doc. No. 1-1] § A.5.b(1), ECF page 68. Throughout the original text of policy, "quotation marks" and capitalized phrases are alternately used to indicate terms defined in the policy.

> (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage . . .[40]

The Extra Expense clause provides that:

> [Cincinnati] will pay Extra Expense [Newtown] sustain[s] during the "period of restoration." Extra Expense means necessary expenses [Newtown] sustain[s] … during the "period of restoration" that [Newtown] would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.[41]

Each of the provisions exclusively provides coverage for a "Covered Cause of Loss." A "Covered Cause of Loss" means direct "loss" (defined as "accidental physical loss or accidental physical damage")[42] unless the loss is specifically excluded or limited.[43]

In addition to the physical loss or damage requirement, each clause contains its own specific triggering conditions. For coverage to be triggered under the terms of the Business Interruption clause or Extra Expense clause, the damage or loss must be sustained "due to the necessary 'suspension' of [Newtown's] 'operations'" or the incurrence of "necessary expenses" during a "period of restoration."[44] To trigger coverage under the Civil Authority provision, a civil authority must have "prohibit[ed] access" to the "premises" in response to a "Covered Cause of Loss" or related damage.[45]

---

[40] Policy [Doc. No. 1-1] § A.5.b(1), ECF page 68.

[41] Policy [Doc. No. 1-1] § A.5.b(2)(a), ECF page 69.

[42] Policy [Doc. No. 1-1] § G.8, ECF page 88.

[43] Policy [Doc. No. 1-1] § A.3, ECF page 55. Newtown and Cincinnati agree that in order to trigger coverage, the policy requires loss to covered property and that loss is defined as "accidental physical loss or accidental physical damage." *See* Compl. [Doc. No. 1-1] ¶¶ 23–24; Mem. L. Supp. Mot. Dismiss [Doc. 5-2] at 5–6.

[44] Policy [Doc. No. 1-1] §§ A.5.b(1)–b(2), ECF pages 68–69.

[45] Policy [Doc. No. 1-1] § A.5.b(3), ECF page 69.

9

2.   *COVID-19 as a "Physical Loss"*

Newtown argues that COVID-19 "demonstrably altered and physically damaged" Newtown's property and that the "transformation from usable to deadly[] is a demonstratable alteration of Newtown's property."[46] To determine if COVID-19 caused "direct physical loss of" the property, Pennsylvania law requires the Court to consider the insurance policy in its entirety.[47]

The term "physical" as used in an insurance policy "unambiguously means there must be tangible destruction of some part of the property."[48] Additionally, the Third Circuit has held that "physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure."[49] However, "[a]llegations of physical damage to a building" or allegations that the use of a property has been reduced by a substantial degree from "sources unnoticeable to the naked eye must meet a higher threshold."[50] Coverage for physical loss may be triggered if "the functionality of [the] property was nearly eliminated or destroyed, or [if the] property was made useless or uninhabitable."[51]

Due to this narrow definition, business owners seeking coverage for COVID-19-related losses have typically filed claims premised on one of two theories: (1) the "physical contamination" theory, and (2) the "loss of use" theory. "[T]he physical contamination" theory

---

[46] Mem. L. Opp'n Mot. Summ. J. [Doc. No. 10] at 1.

[47] *Star Buick GMC*, 541 F. Supp. 3d at 587.

[48] *Shantzer*, 531 F. Supp. 3d at 921.

[49] *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002)); *see also Kessler Dental Assocs., P.C. v. The Dentists Ins. Co.*, 505 F. Supp. 3d 474, 480 (E.D. Pa. 2020) (applying this standard in the context of COVID-19 insurance claims).

[50] *Brian Handel D.M.D., P.C.*, 499 F. Supp. 3d at 99 (citing *Port Auth. of N.Y. & N.J.*, 311 F.3d at 235).

[51] *Spring House Tavern, Inc. v. Am. Fire & Cas. Co.*, 544 F. Supp. 3d 517, 524 (E.D. Pa. 2021) (citations omitted).

asserts "that the virus was physically present on [the insured's] properties, thus making the insured premises unsafe for use."[52] The "loss of use" theory asserts "that the significant restrictions imposed by the government on the manner and degree to which business owners may use their premises are sufficient, on their own, to establish 'direct physical loss of' property."[53] Newtown has pled at least some facts supporting both theories.

      a.  <u>"Physical Contamination" Theory</u>

Newtown has specifically alleged that the COVID-19 virus was physically present on its property and that all public access to the property was prohibited as a result of this dangerous contamination.[54] Since the onset of the COVID-19 pandemic, a significant body of case law has developed in the Third Circuit and the Eastern District of Pennsylvania on this exact issue. The presence of COVID-19 on properties is not enough to qualify as a physical loss where the "contamination . . . can be cured [by] simply disinfecting surfaces."[55] Newtown has failed to plead physical loss due to contamination.

---

[52] *Star Buick GMC*, 541 F. Supp. 3d at 590 n. 9 (quoting *Tria WS LLC v. Am. Auto. Ins. Co.*, 530 F. Supp. 3d 533, 539 (E.D. Pa. 2021)).

[53] *Id.*

[54] Compl. [Doc. No. 1-1] ¶¶ 50, 63–69; Mem. L. Opp'n Mot. Summ. J. [Doc. No. 10] at 4.

[55] *See Whiskey Flats Inc.*, 519 F. Supp. 3d at 236 ("Even if there was coronavirus present at the property, to find that contamination that can be cured with simply disinfecting surfaces satisfies the "physical loss or damage" requirement would strain the words beyond "their natural, plain, and ordinary sense" meaning and be contrary to the standards established in this Circuit for damage caused by sources unnoticeable to the naked eye.") (internal citations omitted) (citing *Port Auth. of N.Y. & N.J.*, 311 F.3d at 235). *See also Infinity Real Est., LLC*, 2021 WL 4169417, at *4 (E.D. Pa. Sept. 13, 2021) ("[I]f the [physical] loss had been caused by coronavirus on inert surfaces, it could be remedied through disinfecting the interior of the property.").

Although Newtown argues that an athletic facility represents a particularly dangerous vector for COVID-19 transmission, this standard is not varied for gymnasiums. *See Chester Cnty. Sports Arena*, 530 F. Supp. 3d at 554.

b.   "Loss of Use"

Newtown also alleges that COVID-19 and the concomitant orders restricting business operations constitute a "loss of use" by preventing the use of Newtown's property for its intended purpose.[56] Newtown alleges that a fitness space is an "ideal medium" for the transmission of COVID-19.[57] Courts in this District have consistently held that while loss of use may sometimes constitute physical loss, to do so "loss of use must be tied to a physical condition actually impacting the property."[58] A property's "susceptibility to contamination" from employees and customers "is not a condition that can trigger coverage under a reasonable reading of the [p]olicy."[59] Although Newtown's closure was at the direction of the Commonwealth of Pennsylvania, "the shutdown orders and accompanying proclamations were in response to the COVID-19 health crisis, not damage to any property—the insureds' or another's."[60] Therefore, Newtown has not sufficiently pleaded that its "loss of use" represented a qualified "physical loss" under Newtown's policy.

3.   *Lack of a Virus Exclusion Clause*

In addition to the "physical contamination" and "loss of use" theories, Newtown argues that the absence of a "virus exclusion" clause from the plain language of the Policy is evidence

---

[56] Compl. [Doc. No. 1-1] ¶ 70.

[57] Mem. L. Opp'n Mot. Summ. J. [Doc. No. 10] at 4.

[58] *Star Buick GMC*, 541 F. Supp. 3d at 590 (E.D. Pa. 2021) (citing *SSN Hotel Mgmt., LLC v. Harford Mut. Ins. Co.*, 533 F. Supp. 3d 260, 266 (E.D. Pa. 2021); *see also Whiskey Flats Inc.*, 519 F. Supp. 3d at 236 ("While the Court agrees that "loss of" the premises can mean the loss of use, that loss of use must be tied to a physical condition actually impacting the property, which is not satisfied here.").

[59] *SSN Hotel Mgmt., LLC*, 533 F. Supp. 3d at 266.

[60] *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 625 (E.D. Pa. 2020); *see also Brian Handel D.M.D., P.C.*, 499 F. Supp. 3d at 100 (E.D. Pa. 2020) (civil authority provision was not triggered where plaintiff did not plead facts showing a direct physical loss and the Governor's orders merely limited, rather than prohibited access to the premises.).

that Newtown had a reasonable expectation that losses caused by viruses would be covered by Newtown's policy.[61] Newtown points to the fact that the "Crisis Event Expense" endorsement, a supplemental policy rider that provides for rapid payouts during certain "covered crisis events," explicitly excludes viruses and pandemics from coverage.[62] Newtown argues that the lack of a similar exclusion under the Business Income, Extra Expense, and Civil Authority provisions means that the parties intended to cover such damage.[63] However, the absence of a virus exclusion provision "has no bearing on the fact that plaintiff's claims do not fall within the scope of a 'Covered Cause of Loss.'"[64]

## IV.   CONCLUSION

The Court is sympathetic to businesses like Newtown that have been significantly affected by the pandemic. However, many cases in federal court have reviewed nearly identical insurance claims under Pennsylvania law, and Newtown has failed to identify any "exceptional circumstances" that justify remanding this case to state court. Because the physical contamination and loss of use pleaded by Newtown do not satisfy the "direct physical loss or damage" coverage requirement set by Newtown's insurance policy, there is no basis for coverage. Newtown's motion to remand will be denied, and Cincinnati's motion to dismiss will be granted. An order will be entered.

---

[61] Compl. [Doc. No. 1-1] ¶¶ 7, 30, 32–34.

[62] Crisis Event Coverage Endorsement [Doc. No. 1-1] § D.2.d, ECF page 134.

[63] Mem. L. Opp'n Mot. Summ. J. [Doc. No. 10] at 6–7. Newtown notes that only 17% of pre-pandemic commercial property policies lack a "virus exclusion" provision, and argues that this relative rarity strengthens the presumption that the policy was intended to cover viral contamination.

[64] *Isaac's Deli, Inc. v. State Auto Prop. & Cas. Ins. Co*., 539 F. Supp. 3d 424, 434 (E.D. Pa. 2021) (holding that the absence of a virus exclusion in plaintiff's policy provides no support for the conclusion plaintiff expected coverage to apply to business loss as a result of COVID-19).